WILLIAM GREEN *et al.*

*vs.*

WILLIAM H. WALKER *et al.*

New Castle, Sept. T. 1874.

*General assignment by insolvent firm; firm and individual debts; priority.*

1. On the question of the application of the assets of an insolvent firm assigned for the benefit of creditors, the court may look beyond a judgment entered against the individuals who composed the firm, and inquire into the origin and nature of the indebtedness on which the judgment was obtained, to ascertain whether it is a firm indebtedness or not.

2. Although a bond upon which a judgment has been entered against the individuals who composed a firm may not state that it was given by the obligors as copartners, yet, where it is shown by evidence that the bond was given for money loaned to the obligors as copartners, and that such money was used by them in their copartnership business, and increased the assets of the firm to that extent,—the debt represented by such bond and the judgment thereon is a partnership, and not a mere individual, debt.

3. The issuance, by a judgment creditor, of execution, placed in the hands of the sheriff prior to the making of a general assignment by the judgment debtor, and followed by a levy within the time limited by law, by force of the Delaware Statutes gives such creditor a priority over other creditors, and entitles him to receive from the

assignee under the general assignment the money obtained by the assignee from a sale of the assigned property up to the amount of the judgment.

BILL TO ESTABLISH THE RIGHTS OF CREDITORS OF AN INSOLVENT FIRM IN THE FUND PRODUCED BY A GENERAL ASSIGNMENT.—Isaac P. Cornog and John Walker Shortlidge, composing the firm of Cornog, Shortlidge, & Co., conducted business as merchants in the city of Wilmington, in this State, from early in the year 1869 until some time in the month of September, 1870, when the copartnership between them was dissolved.

On the 29th day of said month of September, 1870, Cornog and Shortlidge executed and delivered to William H. Walker an assignment of their goods, chattels, and effects for the benefit of their creditors.

Walker took upon himself the execution of the trust mentioned in said deed, possessed himself of all the said trust property, and by sale thereof, and by collecting the debts due said firm, and otherwise, received therefrom the sums of money particularly set forth in his answer.

Part of said property was sold at private sale, and the remainder at public auction, as stated in Walker's answer. The balance remaining in the hands of the trustee, Walker, after payment of necessary expenses, for distribution to the parties entitled, was the sum of $3,803.58.

This sum he applied towards payment and satisfaction of two judgments of Huldah W. Shortlidge against Isaac P. Cornog and J. Walker Shortlidge; one of said judgments being No. 493 as of the May Term, 1869, of the Superior Court, for the payment of $3,500 on or before the 5th day of June, 1870, with lawful interest thereon; and the other of said judgments being No. 545 as of the November Term of said court, 1870, for the payment of $1,800 on or before the expiration of three months from the 1st day of December, 1869, with lawful interest thereon.

Executions of *fieri facias* were on the 28th day of September, 1870, issued out of said court on said judgments

respectively, and delivered to the then sheriff of New Castle County, who thereunder levied on all the goods and chattels assigned as aforesaid to said William H. Walker. These executions were issued and delivered to the sheriff one day prior to the execution of said assignment by Cornog and Shortlidge to said Walker.

The amount of the private sales of the property assigned, made by Walker, the assignee, was $795.41; of the cash sales, $1,226.82; of the auction sales, $2,475.17,—aggregating the amount of $3,701.91.

The amount of collections of debts due to the firm was $189.58, and the amount of rents received by the assignee was $144. The amount due by the firm of Cornog, Shortlidge, & Co. to the plaintiffs was agreed to by the solicitor of the defendants in writing, and such agreement filed in the cause.

*W. S. McCaulley*, for the complainants:

The fund, having been produced by an assignee's sale, was held in trust for the equal benefit pecuniarily of all the copartnership creditors. Pars. Partn. 345 *et seq.*

The clause in the Revised Code which provides that an execution shall bind goods actually levied on within sixty days thereafter has no such meaning as to render it applicable to this case. The Legislature merely sought to give priority to executions levied within sixty days, over others which were suffered to run a longer time without levy. The executions in question were not a lien upon the proceeds of the goods, in the hands of the assignee. The remedy of the plaintiff in the executions is against the sheriff, who may be responsible for having suffered a waste of the property by its being sold by the assignee after having been levied upon.

*Benjamin Nields*, for defendant Walker:

These bonds were signed and sealed by J. Walker Shortlidge and Isaac P. Cornog, they being all and the only members composing the firm of Cornog, Shortlidge, & Co. They

were signed and sealed by all the individual members of the firm, for the reason that if they had been signed and sealed by one member of the firm using the copartnership name, the other members would not have been bound. "A copartner cannot bind the firm by deed," etc. 5 Harrington, 291; 4 Harrington, 428. Cornog and Shortlidge were liable as a firm for the money which they thus borrowed and received from Huldah W. Shortlidge independently of those bonds,— independently of the judgments. A court of equity will therefore presume that it was their intention (from both partners signing and sealing the obligations) to carry that liability into full effect by giving their judgment bonds. Coll. Partn. 586, 587. If their liability was only carried into full effect by giving these judgment bonds, then entering judgments thereon, issuing the executions, and levying on the partnership property, was only further carrying into effect the intention of the parties by applying the property which was liable, to the payment of these debts. "A court of chancery will look beyond the judgment, and inquire into the origin and nature of the transaction." *McDowell* v. *Wilmington & B. Bank*, 1 Harrington, 381; Coll. Partn. 481; *Jacomb* v. *Harwood*, 1 Ves. Sr. 265; *Bishop* v. *Church*, Id. 371; *Primrose* v. *Bromley*, 1 Atk. 89; *Ex parte Hunter*, Id. 223; *Simpson* v. *Vaughan*, 2 Atk. 31; *Church* v. *Sparrow*, 5 Wend. 223; *Ex parte Clowes*, 2 Bro. Ch. 595; *Smith* v. *Jameson*, 5 T. R. 601. In the absence of any proof that the money was applied to copartnership uses and purposes, if all the members of the firm sign the obligation, the firm property will be liable. "Where a creditor has separate judgments against each of two partners, the partnership property is bound to the same extent as if there had been one judgment against both partners." *Brinkerhoff* v. *Marvin*, 5 Johns. Ch. 328.

The assignee was not a purchaser for value; was not a creditor. He was merely a trustee; no more, no less. It was his duty to dispose of the property assigned to him, and apply the proceeds to the creditors of Cornog, Shortlidge, & Co. according to their several equities. What was the posi-

tion of the several creditors, and their rights and equities? One of their creditors, Mrs. Shortlidge, had, prior to the assignment, issued writs of *fi. fa.* which were in the hands of the sheriff before the assignment was made. All of the goods and chattels of Cornog, Shortlidge, & Co. were bound by these writs from the time they were so delivered to the sheriff, which were actually levied upon within sixty days after they came into the hands of the sheriff. Del. Laws, Rev. Code, p. 405; *Taylor* v. *Horsey*, 5 Harrington, 131; *Smith* v. *Reynolds*, 4 Harrington, 112; *Layton* v. *Steel*, 3 Harrington, 512; *Stockley* v. *Wadman*, 1 Houston, 350; Tidd, Pr. p. 599. The assignee received the property subject to the lien and incumbrance that attached to it by virtue of these writs. These executions, and the levies made under them, gave to Mrs. Shortlidge, the plaintiff, such a legal preference and priority over the other creditors as would entitle her to the assistance of this court, if the assignee had refused to apply the money received from the sale of the property in satisfaction of the executions in her favor. *Addison* v. *Burckmyer*, 4 Sandf. Ch. 498; *McElwain* v. *Willis*, 9 Wend. 549; *Brinkerhoff* v. *Brown*, 4 Johns. Ch. 671; *M'Dermutt* v. *Strong*, Id. 687; *Spader* v. *Davis*, 5 Johns. Ch. 280.

*Anthony Higgins*, also for defendant Walker:

The bonds were partnership obligations, because they were the joint obligations of both and the only members of the partnership, and were given to secure the payment of a partnership debt.

The principle of the cases is that in order to charge a partnership as debtor there must be satisfactory evidence that the contract which is the foundation of the charge was joint in point of law. Coll. Partn. 477, 481.

The lien of the executors was neither abandoned nor lost by the assignee taking possession of the goods and making sale thereof. The lien arose from the levy, and continued for two years. Rev. Code, p. 405, § 13.

Possession of the goods by the sheriff is not necessary to create or maintain the lien of the execution. The levy is by inventory and appraisement, not by the possession of the sheriff. *Sipple* v. *Scotten*, 1 Harrington, 107; *Janvier* v. *Sutton*, 3 Harrington, 37.

A stay of proceedings by the plaintiff does not destroy the lien or let in subsequent executions. *Janvier* v. *Sutton*, *supra; Hickman* v. *Hickman*, 3 Harrington, 484.

THE CHANCELLOR.—The controversy in this cause is in respect to the application of the sum of $3,803.58 by Walker, the assignee, towards the payment of the two several debts due by Isaac P. Cornog and John Walker Shortlidge to Huldah W. Shortlidge; which debts were secured by judgments, as aforesaid, upon which executions had been issued and delivered to the sheriff one day before the assignment was made by them to Walker.

It appears that the sheriff, in due time, had levied upon the property so assigned.

· The balance remaining in the hand of the assignee for distribution and payment to the parties entitled thereto, being the sum of $3,803.58, was but little more than the amount due upon the execution issued upon her first judgment, and was greatly below the amount due on both executions in the sheriff's hands. Whether the application of the balance in the hands of the assignee to the payment of debts due to Huldah W. Shortlidge is proper or not depends upon the fact whether said debts are what is called partnership debts, or debts due by the said Isaac P. Cornog and J. Walker Shortlidge as copartners, or by them as individuals and not as copartners.

It does not appear, by words expressed in the bonds on which the judgments in favor of Huldah W. Shortlidge were confessed, that they were given by Cornog and Shortlidge as copartners, but I think that there is no doubt, from the proofs in the cause, that said bonds were given by them for money loaned to them as copartners, at various times before the date

of the bonds, while they were tradir g together as copartners; and that the money so loaned was us?d by them in their partnership business, and increased the assets and property of the firm to the amount so loaned.

If so, the debts due Huldah W Shortlidge, however secured, were partnership debts, and not mere individual debts as contradistinguished therefrom. I think I have a right— and in fact ought—to look beyond the judgments, and inquire into the origin, the nature, and the true character of the indebtedness. *McDowell* v. *Wilmington & B. Bank,* 1 Harrington, 381.

All the parties to this cause, exc ept the trustee, seem to be partnership creditors of Cornog. Shortlidge, & Co., and would, were it not for the judgment; and executions thereon, stand in precisely the same relation in respect to the assets of the firm ; but that relation has been affected, and indeed changed, or rather it does not exist, owing to the fact that Mrs. Shortlidge had, prior to the assignment, issued writs of *fi. fa.* which were in the hands of the sheriff before the assignment was made.

All of the goods and chattels of Cornog, Shortlidge, & Co. were bound by these writs from the time they were so delivered to the sheriff, and were act ually levied upon by him within the time limited by law after they came into his hands. Del. Laws, Rev. Code, p. 405.

The executions and levies gave M rs. Shortlidge, the plaintiff therein, a legal priority over the other creditors ; and entitled her to receive from the assignee, who had sold the properties, the money received from the sale thereof ; the amount of which sale could have been recovered from him had he refused to apply the balance in his hands, arising from the sale, to her executions or debts.

It matters not, as far as a proper decision of this case is concerned, whether that balance of the sale of the property was paid to the sheriff or to Mrs. S iortlidge herself. If it was paid directly to the sheriff, he would have been bound to pay over the amount to her; and if it was paid to Mrs. Short-

lidge herself towards the satisfaction of her debts against Cornog and Shortlidge, it was paid to the creditor having the legal preference over the other creditors of the firm by reason of her diligence in causing the delivery of her executions to the sheriff before the assignment was made by her debtors, Cornog and Shortlidge, to Walker, their assignee.

I shall therefore decree that the money arising from the sale made by Walker, of the partnership property and effects of Cornog, Shortlidge, & Co. which were levied upon by the sheriff under the said writs of execution, was properly applicable towards the payment of said debts; and that the plaintiffs in this cause, in this respect, can take nothing by their bill.

Let a decree be drawn accordingly.